IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ALTICE USA, INC. and | ) | |
| CSC HOLDINGS, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. _____ |
| | ) | |
| COMMWORKS SOLUTIONS, LLC, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs Altice USA, Inc. and CSC Holdings, LLC (together, "Altice" or "Plaintiffs") file this Complaint and Jury Demand against Defendant CommWorks Solutions, LLC ("Defendant") upon personal knowledge of their own actions, and information and belief as to all other matters, as follows:

### NATURE OF THE ACTION

1.      This is an action for declaratory judgment of non-infringement and invalidity of U.S. Patent Nos. 6,832,249 ("the '249 patent"); 6,891,807 ("the '807 patent"); 7,177,285 ("the '285 patent"); 7,463,596 ("the '596 patent"); 7,911,979 ("the '979 patent"); 7,027,465 ("the '465 patent"); RE44,904 ("the RE'904 patent"); 7,760,664 ("the '664 patent"); 8,116,315 ("the '315 patent"); 7,209,950 ("the '950 patent"); 7,937,081 ("the '081 patent"); 8,200,211 ("the '211 patent"); 8,600,372 ("the '372 patent"); 8,923,846 ("the '846 patent"); 9,918,222 ("the '222 patent"); and RE42,883 ("the RE'883 patent") (collectively, the "Asserted Patents") under the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202, and the patent laws of the United States, 35 U.S.C. §§ 1 *et seq*.

2.      Altice seeks relief because Defendant has made it clear through correspondence to Altice that it intends to sue Altice for alleged infringement of the Asserted Patents.

## THE PARTIES

3.      CSC Holdings, LLC is an LLC organized and existing under the laws of the State of Delaware with its principal place of business at One Court Square, Long Island City, New York 11101.

4.      CSC Holdings, LLC is a wholly-owned subsidiary of Altice USA, Inc.

5.      Altice USA, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at One Court Square, Long Island City, New York 11101.

6.      Altice USA, Inc. is a communications and media holding company that, through its direct and indirect affiliates (including CSC Holdings, LLC), delivers broadband, video, mobile, and other services to its direct and indirect affiliates' customers.  These services include services branded under the Suddenlink and Optimum names and provided by subsidiaries of CSC Holdings, LLC (which, in turn, is a subsidiary of Altice USA, Inc.).

7.      On information and belief, Defendant is a limited liability company organized and existing under the laws of the State of Georgia, having its principal place of business at 44 Milton Avenue, Suite 254, Alpharetta, GA  30009.

8.      On information and belief, Defendant is a subsidiary of Brainbox Innovations, LLC, a limited liability company under the laws of the State of Georgia with its principal place of business at 44 Milton Ave., Suite 254, Alpharetta, Georgia 30009.

9.      On information and belief, Brainbox Innovations, LLC has at least four additional subsidiaries that assert patent portfolios: CDN Innovations, LLC; DataCloud Technologies, LLC; DigiMedia Tech, LLC, and Hanger Solutions, LLC.

## FACTUAL BACKGROUND

The Parties' Correspondence

10.    On February 21, 2020, Defendant's licensing agent, IP Investments Group d/b/a IPinvestments Group, sent to Altice USA, Inc. a letter stating that Defendant has over 125 active issued U.S. patent assets.  (*See* Exhibit A ("the February 2020 Letter").)

11.    The February 2020 Letter stated that "while IPinvestments Group is serving as the licensing agent for the CommWorks Portfolio, CommWorks has retained the law firm of Kheyfits Belenky LLP to serve as outside litigation / licensing counsel."

12.    The February 2020 Letter described its purpose as "to acquaint you with the CommWorks Portfolio and to open a dialogue for Altice to obtain a license under the CommWorks Portfolio prior to any potential enforcement action being initiated."

13.    On April 17, 2020, Kheyfits Belenky LLP sent, on behalf of Defendant, a letter to Altice USA, Inc., Suddenlink Communications, and CSC Holdings, LLC.  The letter alleged that certain Asserted Patents are "of particular interest to Altice USA, Inc. and its Optimum and Suddenlink branded services."  (*See* Exhibit B ("the April 2020 Letter").)  The Asserted Patents raised in the April 2020 Letter are the '249, '807, '465, '285, '596, '664, '979, '315, and RE'904 patents (referred to in the letter as "the CommWorks Patents").

14.    The April 2020 Letter asserted that "based on publicly available information, it is the understanding and contention of CommWorks that Altice USA, Inc. infringes and induces others, such as its customers, integrators, and suppliers, to infringe claims of the CommWorks Patents."

15.    The April 2020 Letter provided no explanation of CommWorks' infringement allegations, and merely referenced broad product categories such as "Wi-Fi enabled modems and

routers," "passive optical network (PON) equipment," "network switches and routers," and "network infrastructure provisioning tools used to provision network routers and switches."

16.     On May 15, 2020, IPinvestments Group sent a letter to Altice USA, Inc. "to follow up on our previous communications between CommWorks and Altice" and "to bring several additional patents to your attention."   (*See* Exhibit C ("the May 2020 Letter").)   The patents included the '950, '081, '211, '372, '846, '222, and RE'883 patents.

17.     The May 2020 Letter asserted that, "based on publicly available information, it is the understanding and contention of CommWorks that Altice infringes and induces others, such as its customers, integrators, and suppliers, to infringe claims of the above CommWorks patents."

18.     The May 2020 Letter provided no explanation of CommWorks' infringement allegations, and merely made bare references to certain industry standards.

19.     On June 3, 2020, Altice USA sent a letter to IPinvestments Group requesting any additional information, such as claim charts, regarding CommWorks' infringement allegations. (*See* Exhibit D ("the June 2020 Letter").)

20.     On July 27, 2020, and August 18, 2020, CommWorks provided claim charts purporting to allege infringement of the Asserted Patents by "Altice, Optimum, and Suddenlink." The claims charts asserted that they were directed to "exemplary Altice, Optimum, and Suddenlink (referred to as 'Altice' for brevity herein) networks and equipment."[1]

21.     In all, through its correspondence, CommWorks has alleged that Altice infringes the following claims (individually, an "Asserted Claim," and collectively, "the Asserted Claims"):

- Claim 11 of the '249 patent

---

[1]     CommWorks marked its July 27, 2020 and August 18, 2020 correspondence "Confidential."   As such, Altice incorporates the contents of the correspondence into this Complaint as if set forth in their entirety, and will provide copies of the correspondence at a later date as Exhibits BB and CC, respectively.

- Claim 17 of the '807 patent
- Claim 1 of the '465 patent
- Claim 1 of the '285 patent
- Claim 1 of the '596 patent
- Claim 7 of the '664 patent
- Claim 1 of the '979 patent
- Claim 1 of the '315 patent
- Claim 7 of the RE'904 patent
- Claim 1 of the '950 patent
- Claims 1 and 2 of the '081 patent
- Claim 1 of the '211 patent
- Claim 1 of the '372 patent
- Claim 1 of the '846 patent
- Claim 1 of the '222 patent
- Claim 1 of the RE'883 patent

22.     To date, Defendant has filed seven suits alleging infringement of at least some of the Asserted Patents.  *See CommWorks Solutions, LLC. v. Cable One, Inc.*, Case No. 2:20-cv-00158-JRG (E.D. Tex.); *CommWorks Solutions, LLC. v. Consolidated Communications Holdings, Inc.*, 2:20-cv-00159-JRG (E.D. Tex.); *CommWorks Solutions, LLC. v. AMG Tech. Investment Grp.*, 2:20-cv-00160; *CommWorks Solutions, LLC. v. Mediacom Commc'ns Corp.*, 1:20-cv-7529-LGS (S.D.N.Y.); *CommWorks Solutions, LLC. v. Skybeam Acquisition Corp.*, 6:21-cv-00368-ADA (W.D. Tex.); *CommWorks Solutions, LLC. v. RCN Telecom Servs.*, 1:20-cv-7534-MKV (S.D.N.Y.); and *CommWorks Solutions, LLC. v. Comcast Cable Commc'ns, LLC*, 6:21-cv-00366-ADA (W.D. Tex.).

23.     These suits were preceded by correspondence similar to that received by Altice. *See, e.g., CommWorks v. Comcast,* D.I. 1 ¶¶ 27-33 (CommWorks letters in February – August 2020 resulting in suit filed in April 2021); *CommWorks v. Skybeam*, D.I. 1 ¶¶ 24-25 (CommWorks letters in April 2020 leading to suit filed in April 2021).

<u>The Asserted Patents</u>

24.     The '249 patent issued on December 4, 2004 and is entitled "Globally Accessible Computer Network-Based Broadband and Communication System with User-Controllable Quality of Information Delivery and Flow Priority."  The '249 patent is attached as Exhibit E.  Claim 11 of the '249 patent is reproduced below.

> **11.**  A method for providing broadband communications over a multi-layered network having a plurality of Open System Interconnection (OSI) reference model layers functioning therein, comprising:
>
> > monitoring at least one OSI reference model layer functioning in the multi-layered network;
> >
> > determining that a quality of service event has occurred in the multi-layered network;
> >
> > determining that the quality of service event occurred at a layer N in the OSI reference model;
> >
> > responding to the quality of service event in the multi-layered network by changing network provisioning at a layer less than N; and
> >
> > signaling that the network provisioning at the layer less than N has been changed.

25.     The '807 patent issued on May 10, 2005, and is entitled "Time Based Wireless Access Provisioning."  The '807 patent is attached as Exhibit F.  Claim 17 of the '807 patent is reproduced below.

> **17.**  A time based network access provisioning system between a wireless device and a network, comprising:
>
> > a network access point connected to the network; the network access point comprising logic for tracking operation of the wireless device; and
> >
> > logic for provisioning the wireless device if the operation of the wireless device occurs within an activatible time interval.

26.     The '285 patent issued on February 13, 2007, and is entitled "Time Based Wireless Access Provisioning."  The '285 patent is attached as Exhibit G.  Claim 1 of the '285 patent is reproduced below.

> **1.**   A process for provisioning between a wireless device and a network, comprising the steps of:
>
> tracking an operating parameter of the wireless device within a service area, wherein the operating parameter of the wireless device comprises an onset of a signal transmission of the wireless device; and
>
> initiating provisioning of the wireless device if the tracked operating parameter occurs within a time interval.

27.     The '596 patent issued on December 9, 2008, and is entitled "Time Based Wireless Access Provisioning."  The '596 patent is attached as Exhibit H.  Claim 1 of the '596 patent is reproduced below.

> **1.**   A process for associating devices, comprising the steps of:
>
> tracking an operating parameter of a first device, wherein the operating parameter of the first device comprises any of a power on of the first device, and an onset of a signal transmission of the first device; and
>
> automatically associating the first device with at least one other device if the tracked operating parameter occurs within a time interval.

28.     The '979 patent issued on March 22, 2011, and is entitled "Time Based Wireless Access Provisioning."  The '979 patent is attached as Exhibit I.  Claim 19 of the '979 patent is reproduced below.

> **19.**   A network access device, comprising:
>
> access control logic configured to:
>
> track an operating parameter of a first device, where in the operating parameter of the first device includes any of an indication of a power-

on of the first device, and an onset of a signal transmission from the first device; and

send a signal to initiate provisioning of the first device with a network if the tracked operating parameter occurs within a designated time interval; and

a transceiver configured to wirelessly communicate with the first device.

29.    The '465 patent issued on April 11, 2006, and is entitled "Method for Contention Free Traffic Detection."  The '465 patent is attached as Exhibit J.  Claim 1 of the '465 patent is reproduced below.

**1.**  A method for detecting priority of data frames in a network comprising the steps of

extracting a bit pattern from a predetermined position in a frame;

comparing said extracted bit pattern with a search pattern, and

identifying a received frame as a priority frame in case said extracted bit pattern matches with said search pattern,

wherein said predetermined position in said frame is defined by the offset of said bit pattern in said frame.

30.    The RE'904 patent issued on May 20, 2014, and is entitled "Method for Contention Free Traffic Detection."  The RE'904 patent is attached as Exhibit K.  Claim 7 of the RE'904 patent is reproduced below.

**7.**  A method comprising:

detecting a received frame is a priority frame based, at least in part, on

information in the received frame, including

extracting a bit pattern from a predetermined position in the received frame and

comparing the extracted bit pattern with a search pattern, and

8

wherein the detecting is based on a match between the extracted bit pattern and the search pattern;

transmitting the received frame in a transmit period reserved for priority frames in response to the detecting; and

adjusting a duration of the transmit period reserved for priority frames based on statistic information regarding sent priority frames.

31.    The '664 patent issued on July 20, 2010, and is entitled "Determining and Provisioning Paths in a Network."  The '664 patent is attached as Exhibit L.  Claim 7 of the '664 patent is reproduced below.

> **7.**  A method for routing network traffic between a first network and a second network,
>
> > each of said first and second networks comprising a plurality of network elements,
> >
> > said plurality of network elements connected by a digital cross connect,
>
> said method comprising the steps of:
>
> > determining, with a network configuration management system, the interconnections created by said digital cross connect between at least two network elements in said plurality of network elements; and
> >
> > representing each of said interconnections as a link between said at least two network elements; and
> >
> > storing a status of each of said interconnections in a cross connection status database,
> >
> > > wherein the status indicates whether a cross-connection using said digital cross-connect was successfully provisioned.

32.    The '315 patent issued on February 14, 2012, and is entitled "System and Method for Packet Classification."  The '315 patent is attached as Exhibit M.  Claim 7 of the '315 patent is reproduced below.

**7.** A method for data packet processing in a telecommunications system, comprising:

at an ingress edge unit of a router,

> determining a set of classification parameters for a data packet arriving at the ingress edge unit,
>
>> wherein the classification parameters include destination information and one or more quality of service (QoS) parameters for the data packet, and
>>
>>> wherein the destination information includes a destination egress port of the router;
>
> constructing a classification index including the set of classification parameters for a plurality of data packets, and also including information about a plurality of queues associated with the QoS parameters;

forwarding the classification index to at least one designation edge unit of the router, including a destination edge unit associated with the destination edge egress port associated with the data packet; and

forwarding the data packet to the destination egress port according to the classification parameter determined at the ingress edge unit and without requiring reclassification of the data packet.

33.    The '950 patent issued on April 24, 2007, and is entitled "Method and Apparatus for a Network and Independent Short Message Delivery System." The '950 patent is attached as Exhibit N. Claim 1 of the '950 patent is reproduced below.

**1.** A method executed in a computer system for routing a message from

> a sender in a first digital mobile network employing a first digital mobile network protocol to an intended receiver in a second different digital mobile network,
>
> the second digital mobile network employing a second digital mobile network protocol that is different from the first network protocol,
>
> the message comprising a message body and associated message routing information,

the method comprising:

forwarding said message to a server from said sender,

said server being connectable to said first and said second digital mobile network;

relating, at the application layer using a routing database,

a receiver identifier,

the receiver identifier being contained in the associated message routing information and associated with the intended receiver,

to a method associated with a network connection type associated with the second digital mobile network and corresponding routing format information associated with the second digital mobile network protocol,

the routing format information associated with the second digital mobile network protocol comprising at least

a second protocol mobile carrier interface format type and a second protocol mobile carrier addressing format type;

reformatting said associated message routing information into a format specified by said corresponding routing format information,

wherein the reformatting is transparent to a sender and receiver of the message and the message body remains unchanged, by the steps of:

translating the receiver identifier to a destination address that conforms to the second protocol mobile carrier addressing format type;

placing the destination address into a reformatted message that has a structure that conforms to the second protocol mobile carrier interface format type; and

placing the message body unchanged into the reformatted message in a manner that conforms to the

second protocol mobile carrier interface format type; and

forwarding said reformatted message to said receiver in accordance with the method associated with the network connection type and the reformatted associated message routing information.

34.    The '081 patent issued on May 3, 2011, and is entitled "Recovery Techniques in Mobile Networks." The '081 patent is attached as Exhibit O. Claim 1 (canceled during re-exam) and Claim 2 of the '081 patent is reproduced below.

    **1.** A method comprising:

receiving a call for a subscriber at an Interrogating-Call State Control Function (I-CSCF);

sending a route request from the I-CSCF to a User Mobility Server (UMS);

receiving an address of a Server-Call State Control Function (S-CSCF) at the I-CSCF from the UMS; and

sending a call setup request from the I-CSCF to the S-CSCF.

    **2.** The method of claim **1**, wherein said sending a route request comprises

querying the UMS based on an alias of the subscriber which was dialed by a party that sent the call.

35.    The '211 patent issued on June 12, 2012, and is entitled "Recovery Techniques in Mobile Networks." The '211 patent is attached as Exhibit P. Claim 1 of the '211 patent is reproduced below.

    **1.** A method comprising:

receiving a first query at a user mobility server (UMS) from a first call state control function (CSCF);

transmitting a call setup and a subscriber identity (SI) to a servicing-call state control function (S-CSCF) from the UMS;

> receiving a second query at the UMS from the S-CSCF based at least in part on the SI; and
>
> transmitting a home address of a mobile station to the S-CSCF from the UMS.

36.     The '372 patent issued on December 3, 2013, and is entitled "Recovery Techniques in Mobile Networks."   The '372 patent is attached as Exhibit Q.   Claim 1 of the '372 patent is reproduced below.

> **1.**  A method comprising:
>
> > receiving at a first server a registration request from a subscriber in a mobile network,
> >
> > > wherein the registration request includes a transport address for the subscriber;
> >
> > communicating the transport address and an address of the first server from the first server to a second server for storage;
> >
> > identifying a loss of the transport address by the first server; and
> >
> > receiving the stored transport address at the first server from the second server in response to the loss of the transport address by the first server.

37.     The '846 patent issued on December 30, 2014, and is entitled "Recovery Techniques in Mobile Networks."   The '846 patent is attached as Exhibit R.   Claim 1 of the '846 patent is reproduced below.

> **1.**  A method comprising:
>
> > receiving, from a first server at a second server,
> >
> > > a transport address and an address of the first server;
> >
> > receiving, at the second server,
> >
> > > a request from the first server to restore the transport address; and

in response to the request from the first server to restore the transport address, communicating the transport address to the first server from the second server.

38.     The '222 patent issued on March 13, 2018, and is entitled "Recovery Techniques in Mobile Networks."  The '222 patent is attached as Exhibit S.  Claim 1 of the '222 patent is reproduced below.

**1.**  A method comprising:

receiving a call setup request including a subscriber identity and a dialed alias for a subscriber at a serving-call state control function (S-CSCF) for call registration after the S-CSCF crashes and restarts;

sending a route request from the S-CSCF to a user mobility server (UMS) to trigger a profile download including the home address of the subscriber;

receiving the home address of the subscriber at the S-CSCF from the UMS to facilitate communication from the S-CSCF to the home address; and

sending the call setup request from the S-CSCF to a home agent at the home address of the subscriber to establish a call with a mobile station.

39.     The RE'883 patent issued on November 1, 2011, and is entitled "Enhanced Phone-Based Collaboration."  The RE'883 patent is attached as Exhibit T.  Claim 1 of the RE'883 patent is reproduced below.

**1.**  A method for transitioning from an existing telephone call to a real-time collaboration session in a system including a telephone network for establishing connections between users and a data network for establishing data sharing sessions between said users,

each of said users having an associated user access and presentation device,

said data network including an enhanced phone based collaboration (EPC) application, and

14

at least one of said users subscribing to said enhanced phone based collaboration application,

said method including the step of comprising:

> responsive to said one user on an existing telephone call user clicking on a control button on said user's associated device,
>
> a server in a telephone network invoking the operation of said EPC application solely by clicking on a control button on said user's associated device to cause said enhanced phone based collaboration to add the collaboration session to the existing telephone call between said users without the users exchanging collaboration session identifiers.

## JURISDICTION AND VENUE

40.     The foregoing paragraphs are incorporated as if set forth herein.

41.     This action arises under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.* This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338, and 2201 based on a definite and concrete, real and substantial, justiciable controversy between Altice, on the one hand, and Defendant, on the other hand, for declaratory judgment of patent non-infringement and invalidity under 28 U.S.C. §§ 1331, 1338, 2201 and 2202.

42.     The Court has specific personal jurisdiction over Defendant pursuant to Delaware's Long Arm Statute, 10 Del. C. § 3104 and the Due Process Clause of the Fourteenth Amendment by virtue of the Defendant's contacts with Delaware.

43.     Defendant has purposefully directed its enforcement activity at Delaware by virtue of its demand letter campaign targeting Delaware corporations, including Altice.

44.     Defendant has further directed its enforcement activity at Delaware by virtue of its litigation campaign.  Defendant's enforcement campaign has targeted numerous entities organized under the laws of, or incorporated in, Delaware.

45.     In Case No. 2:20-cv-00158 (EDTX), Defendant targeted Cable One, Inc., a Delaware corporation.

46.     In Case No. 2:20-cv-00159 (EDTX), Defendant targeted Consolidated Communications Holdings, Inc. and Consolidated Communications Enterprise Services, Inc., both of which are Delaware corporations.

47.     In Case No. 1:20-cv-07534 (SDNY), Defendant targeted RCN Telecom Services, LLC, a Delaware LLC.

48.     In Case No. 1:20-cv-07529 (SDNY) Defendant targeted Mediacom Communications Corporation, a Delaware corporation.

49.     In Case No. 6:21-cv-00366 (WDTX) Defendant targeted Comcast Cable Communications, LLC and Comcast Cable Communications Management, LLC, both of which are Delaware LLCs.

50.     Defendant purposefully availed itself of the protections of the State of Delaware upon assignment of the Asserted Patents.  On information and belief, the assignors of any interest Defendant has in the Asserted Patents are Delaware LLCs, Intellectual Ventures Assets 130 LLC and  Intellectual Ventures Assets 135 LLC (together, "Intellectual Ventures"), which recorded each recorded an address at 251 Little Falls Drive, Wilmington, DE 19808.  Intellectual Ventures conveyed the Asserted Patents to Defendant over five separate conveyances, which are attached to this Complaint as Exhibits U-Y, on November 15, 2019.

51.     On information and belief, Intellectual Ventures maintains a security interest in the patents it assigned to Defendant, including the Asserted Patents, which has been recorded in Georgia.  The associated UCC financing statements, which were filed on December 5, 2019, are

attached to this Complaint as Exhibits Z and AA, and reference agreements between Intellectual Ventures and CommWorks governing the secured sale of the patent portfolio.

52.     By virtue of the secured assignment of rights in the Asserted Patents from the two Intellectual Ventures LLCs, Defendant has further purposefully directed its enforcement activity at Delaware by creating an ongoing relationship of obligation to Delaware entities that subjects it to this Court's personal jurisdiction.

53.     Defendant's campaign of patent licensing and assertion is part of a broader, coordinated patent assertion campaign driven by Brainbox and executed through Defendant and its sister LLCs, including the other Brainbox subsidiaries CDN Innovations LLC, DataCloud Technologies, LLC, and DigiMedia Tech, LLC.  Each of these entities obtained assignments of patent portfolios from one or more Delaware LLCs, each of which is a differently numbered "Intellectual Ventures Assets" LLC.

54.     DataCloud Technologies, LLC obtained its patent portfolio through conveyances from Intellectual Ventures Assets 148, LLC and Intellectual Ventures Assets 151, LLC, both Delaware LLCs.  These assignments were also executed on November 15, 2019, the same day as Defendant's assignments referenced above.  UCC financing statements for these assignments were filed on December 5, 2019, the same day as Defendant's financing statements referenced above.

55.     CDN Innovations, LLC obtained its patent portfolio through conveyances from Intellectual Ventures Assets 144, LLC and Intellectual Ventures Assets 147, LLC, both Delaware LLCs.  These assignments were also executed on November 15, 2019, the same day as Defendant's assignments referenced above.  UCC financing statements for these assignments were filed on December 5, 2019, the same day as Defendant's financing statements referenced above.

56.     DigiMedia Tech, LLC obtained its patent portfolio through conveyances from Intellectual Ventures Assets 142, LLC and Intellectual Ventures Assets 145, LLC, both Delaware LLCs.  These assignments were also executed on November 15, 2019, the same day as Defendant's assignments referenced above.  UCC financing statements for these assignments were filed on December 5, 2019, the same day as Defendant's financing statements referenced above.

57.     As part of the coordinated Brainbox patent assertion campaign, Defendant's sister entities DigiMedia Tech, LLC and DataCloud Technologies, LLC have litigated claims against accused infringers in the District of Delaware.  *See* Case Nos. 1:21-cv-01020 (DDE), 1:21-cv-00837 (DDE), 1:21-cv-00170 (DDE), 1:21-cv-00164 (DDE), 1:21-cv-00155 (DDE), 1:21-cv-01313 (DDE), 1:21-cv-01314 (DDE), 1:21-cv-00763 (DDE), 1:21-cv-00764 (DDE), and 1-21-cv-00227 (DDE).

58.     As part of the coordinated Brainbox patent assertion campaign, Defendant's sister entities DigiMedia Tech, LLC and DataCloud Technologies, LLC continue to litigate claims against accused infringers in the District of Delaware as of the date of this Complaint. *See* Case Nos. 1:21-cv-01020 (DDE), 1:21-cv-00164 (DDE), 1-21-cv-00227 (DDE).

59.     As part of the coordinated Brainbox patent assertion campaign, Brainbox and its subsidiaries, including Defendant, have further directed their enforcement activity at Delaware by virtue of Defendant's sister entity CDN Innovations, LLC's repeated representation by attorneys in the Delaware office of the Devlin Law Firm to handle its licensing and patent assertion campaign, including sending a demand letter to Altice from the Devlin Law Firm's Delaware address.  Attorneys from The Devlin Law Firm have represented CDN Innovations, LLC in at least twelve patent infringement cases, listing a Delaware address on CDN Innovation, LLC's court submissions.  *See* case nos. 6-20-cv-00442 (WDTX), 6-20-cv-00443 (WDTX), 6-20-cv-00444

(WDTX), 6-20-cv-00445 (WDTX), 6-20-cv-00446 (WDTX), 6-20-cv-00447 (WDTX), 6-20-cv-00448 (WDTX), 4-20-cv-00653 (EDTX), 4-20-cv-00709 (EDTX), 6-20-cv-00959 (WDTX), 4-21-cv-00381 (EDTX), and 1-21-cv-02240 (NDGA).

60.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)-(c).  Because Defendant is subject to the personal jurisdiction of the District of Delaware for this action, Defendant is deemed to reside in the District of Delaware under 28 U.S.C. §§ 1391(c)(2), and venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(1).

### COUNT 1
### (Declaratory Judgment of Non-infringement of the '249 patent)

61.    The foregoing paragraphs are incorporated as if set forth herein.

62.    By virtue of Defendant's past litigation history and assertion letters to Altice, an actual controversy exists between Altice and Defendant as to whether Altice infringes the Asserted Claim of the '249 patent.  A valid and justiciable controversy has arisen and exists between Altice and Defendant within the meaning of 28 U.S.C. § 2201.

63.    Defendant has made allegations of infringement of the '249 patent "relating to exemplary Altice, Optimum, and Suddenlink (referred to as 'Altice' for brevity herein) networks and equipment."  (July 27, 2020 correspondence at BB-002.)

64.    Specifically, Defendant has asserted that Juniper routers and switches (supplied by a third party) within Altice networks infringe claim 11 of the '249 patent.

65.    Altice does not infringe claim 11 of the '249 patent.

66.    Without limiting the generality of the foregoing and by way of example only, Altice does not meet, either literally or under the doctrine of equivalents, at least the following claim limitation of claim 11 of the '249 patent: "monitoring at least one OSI reference model layer functioning in the network."  Altice does not actively monitor an OSI reference model layer.

## COUNT 2
### (Declaratory Judgment of Invalidity of the '249 Patent)

67.     The foregoing paragraphs are incorporated as if set forth herein.

68.     By virtue of Defendant's past litigation history and assertion letters to Altice, an actual controversy exists between Altice and Defendant as to whether claim 11 of the '249 patent is valid.

69.     Claim 11 of the '249 patent is invalid and void because it fails to comply with one or more of the conditions and requirements of the patent laws, including without limitation 35 U.S.C. §§ 101, 102, 103, and/or 112, and/or the rules, regulations, laws, and decisions pertaining thereto.

70.     Claim 11 of the '249 patent is invalid under 35 U.S.C. § 101 because it is directed to, in general terms, the patent-ineligible abstract idea of monitoring an object and responding to an event that takes place with respect to the object.  Claim 11 merely recites this idea in a generic network environment.

71.     Even if the Asserted Claim were not invalid under Section 101, and in light of Defendant's apparent construction of the claim employed in its infringement allegation, the claim would be invalid under 35 U.S.C. §§ 102 and/or 103.  As a non-limiting example, this claim is anticipated or rendered obvious in view of EP Pat. App. No. 0 632 672 to Baugher, which was published on January 4, 1995 (before the May 19, 2000, priority date of the '249 patent).

72.     Claim 11 of the '249 patent is also invalid under 35 U.S.C. § 112 because, for example, it lacks adequate written description (e.g., there is no adequate written description of the "changing network provisioning" step).

73.     Pursuant to 28 U.S.C. §§ 2201 and 2202, a judicial determination of the respective rights of the parties with respect to whether the Asserted Claim of the '249 patent is invalid and void is necessary and appropriate under the circumstances.

## COUNT 3
### (Declaratory Judgment of Non-Infringement of the '807 patent)

74.     The foregoing paragraphs are incorporated as if set forth herein.

75.     By virtue of Defendant's past litigation history and assertion letters to Altice, an actual controversy exists between Altice and Defendant as to whether Altice infringes the Asserted Claim of the '807 patent.  A valid and justiciable controversy has arisen and exists between Altice and Defendant within the meaning of 28 U.S.C. § 2201.

76.     Defendant has made allegations of infringement of the '807 patent "relating to exemplary Altice, Optimum, and Suddenlink (referred to as 'Altice' for brevity herein) networks and equipment."  (July 27, 2020 correspondence at BB-021.)

77.     Specifically, Defendant has alleged that Altice's Altice One system infringes claim 17 of the '807 patent.

78.     Altice does not infringe claim 17 of the '807 patent.

79.     Without limiting the generality of the foregoing and by way of example only, the Altice One system does not meet, either literally or under the doctrine of equivalents, at least the following claim limitation of claim 11 of the '807 patent: "logic for provisioning the wireless device if the operation of the wireless device occurs within an activatible time interval."  To the extent adequate structure for this limitation is disclosed in the '807 patent, Altice One does not contain the structure.

<u>COUNT</u> **4**
**(Declaratory Judgment of Invalidity of the '807 Patent)**

80.     The foregoing paragraphs are incorporated as if set forth herein.

81.     By virtue of Defendant's past litigation history and assertion letters to Altice, an actual controversy exists between Altice and Defendant as to whether Claim 17 of the '807 patent is valid.

82.     Claim 17 of the '807 patent is invalid and void because it fails to comply with one or more of the conditions and requirements of the patent laws, including without limitation 35 U.S.C. §§ 101, 102, 103, and/or 112, and/or the rules, regulations, laws, and decisions pertaining thereto.

83.     Claim 17 of the '807 patent is invalid under 35 U.S.C. § 101 because, in general terms, it is directed to the patent-ineligible abstract idea of taking an action if a request is made within a given time period.  Claim 17 recites no unconventional application of this idea, and simply generically applies it to a network environment.

84.     Even if the Asserted Claim were not invalid under Section 101, and in light of Defendant's apparent construction of the claim employed in its infringement allegation, the claim would be invalid under 35 U.S.C. §§ 102 and/or 103.  As a non-limiting example, this claim is anticipated or rendered obvious in view of U.S. Pat. App. Pub. No. 2001/0053135, which published on December 20, 2001 (before the January 13, 2003, priority date of the '807 patent).

85.     Claim 17 of the '807 patent is also invalid under 35 U.S.C. § 112 because, for example, it recites claim elements subject to 35 U.S.C. § 112 ¶ 6 but the '807 patent fails to provide sufficient structure for the elements (e.g., "logic for tracking operation of the wireless device").

86.     Pursuant to 28 U.S.C. §§ 2201 and 2202, a judicial determination of the respective rights of the parties with respect to whether the Asserted Claim of the '807 patent is invalid and void is necessary and appropriate under the circumstances.

### COUNT 5
### (Declaratory Judgment of Non-infringement of the '285 patent)

87.     The foregoing paragraphs are incorporated as if set forth herein.

88.     By virtue of Defendant's past litigation history and assertion letters to Altice, an actual controversy exists between Altice and Defendant as to whether Altice infringes the Asserted Claim of the '285 patent.  A valid and justiciable controversy has arisen and exists between Altice and Defendant within the meaning of 28 U.S.C. § 2201.

89.     Defendant has made allegations of infringement of the '285 patent "relating to exemplary Altice, Optimum, and Suddenlink (referred to as 'Altice' for brevity herein) networks and equipment."  (July 27, 2020 correspondence at BB-064.)

90.     Specifically, Defendant has alleged that Altice's Altice One system infringes claim 1 of the '285 patent.

91.     Altice does not infringe claim 1 of the '285 patent.

92.     Without limiting the generality of the foregoing and by way of example only, the Altice One system does not meet, either literally or under the doctrine of equivalents, at least the following claim limitation of claim 1 of the '285 patent: "initiating provisioning of the wireless device if the tracked operating parameter occurs within a time interval," wherein "the operating parameter of the wireless device comprises an onset of a signal transmission of the wireless device."  The system does not initiate provisioning when the onset of a signal transmission of a wireless device occurs within a time interval.

## COUNT 6
### (Declaratory Judgment of Invalidity of the '285 Patent)

93.     The foregoing paragraphs are incorporated as if set forth herein.

94.     By virtue of Defendant's past litigation history and assertion letters to Altice, an actual controversy exists between Altice and Defendant as to whether Claim 1 of the '285 patent is valid.

95.     Claim 1 of the '285 patent is invalid and void because it fails to comply with one or more of the conditions and requirements of the patent laws, including without limitation 35 U.S.C. §§ 101, 102, 103, and/or 112, and/or the rules, regulations, laws, and decisions pertaining thereto.

96.     Claim 1 of the '285 patent is invalid under 35 U.S.C. § 101 because, in general terms, it is directed to the patent-ineligible abstract idea of taking an action if a request is made within a given time period.  Claim 1 recites no unconventional application of this idea, and simply generically applies it to a network environment.

97.     Even if the Asserted Claim were not invalid under Section 101, and in light of Defendant's apparent construction of the claim employed in its infringement allegation, the claim would be invalid under 35 U.S.C. §§ 102 and/or 103.  As a non-limiting example, this claim is anticipated or rendered obvious in view of U.S. Pat. App. Pub. No. 2001/0053135, which published on December 20, 2001 (before the January 13, 2003, alleged priority date of the '285 patent).

98.     Claim 1 of the '285 patent is also invalid under 35 U.S.C. § 112 because, for example, it lacks adequate written description (e.g., there is no adequate written description of "initiating provisioning of the wireless device if the tracked operating parameter occurs within a time interval").

99.     Pursuant to 28 U.S.C. §§ 2201 and 2202, a judicial determination of the respective rights of the parties with respect to whether the Asserted Claim of the '285 patent is invalid and void is necessary and appropriate under the circumstances.

### COUNT 7
### (Declaratory Judgment of Non-Infringement of the '596 patent)

100.    The foregoing paragraphs are incorporated as if set forth herein.

101.    By virtue of Defendant's past litigation history and assertion letters to Altice, an actual controversy exists between Altice and Defendant as to whether Altice infringes the Asserted Claim of the '596 patent.  A valid and justiciable controversy has arisen and exists between Altice and Defendant within the meaning of 28 U.S.C. § 2201.

102.    Defendant has made allegations of infringement of the '596 patent "relating to exemplary Altice, Optimum, and Suddenlink (referred to as 'Altice' for brevity herein) networks and equipment."  (July 27, 2020 correspondence at BB-074.)

103.    Specifically, Defendant has alleged that the Altice One system infringes claim 1 of the '596 patent.

104.    Altice does not infringe claim 1 of the '596 patent.

105.    Without limiting the generality of the foregoing and by way of example only, the Altice One system does not meet, either literally or under the doctrine of equivalents, at least the following claim limitation of claim 1 of the '596 patent: "automatically associating the first device with at least one other device if the tracked operating parameter occurs within a time interval," wherein the operating parameter comprises "an onset of a signal transmission of the first device." The system does not initiate provisioning when the onset of a signal transmission of a first device occurs within a time interval.

## COUNT 8
### (Declaratory Judgment of Invalidity of the '596 Patent)

106.    The foregoing paragraphs are incorporated as if set forth herein.

107.    By virtue of Defendant's past litigation history and assertion letters to Altice, an actual controversy exists between Altice and Defendant as to whether claim 1 of the '596 patent is valid.

108.    Claim 1 of the '596 patent is invalid and void because it fails to comply with one or more of the conditions and requirements of the patent laws, including without limitation 35 U.S.C. §§ 101, 102, 103, and/or 112, and/or the rules, regulations, laws, and decisions pertaining thereto.

109.    Claim 1 of the '596 patent is invalid under 35 U.S.C. § 101 because, in general terms, it is directed to the patent-ineligible abstract idea of taking an action if a request is made within a given time period.  Claim 1 recites no unconventional application of this idea, and simply generically applies it to a network environment.

110.    Even if the Asserted Claim were not invalid under Section 101, and in light of Defendant's apparent construction of the claim employed in its infringement allegation, the claim would be invalid under 35 U.S.C. §§ 102 and/or 103.  As a non-limiting example, this claim is anticipated or rendered obvious in view of U.S. Pat. App. Pub. No. 2001/0053135, which published on December 20, 2001 (before the January 13, 2003, priority date of the '596 patent).

111.    Claim 1 of the '595 patent is also invalid under 35 U.S.C. § 112 because, for example, it lacks adequate written description (e.g., there is no adequate written description of "automatically associating the first device with at least one other device if the tracked operating parameter occurs within a time interval").

26

112.     Pursuant to 28 U.S.C. §§ 2201 and 2202, a judicial determination of the respective rights of the parties with respect to whether the Asserted Claim of the '596 patent is invalid and void is necessary and appropriate under the circumstances.

### COUNT 9
### (Declaratory Judgment of Non-Infringement of the '979 patent)

113.     The foregoing paragraphs are incorporated as if set forth herein.

114.     By virtue of Defendant's past litigation history and assertion letters to Altice, an actual controversy exists between Altice and Defendant as to whether Altice infringes the Asserted Claim of the '979 patent.  A valid and justiciable controversy has arisen and exists between Altice and Defendant within the meaning of 28 U.S.C. § 2201.

115.     Defendant has made allegations of infringement of the '979 patent "relating to exemplary Altice, Optimum, and Suddenlink (referred to as 'Altice' for brevity herein) networks and equipment."  (July 27, 2020 correspondence at BB-101.)

116.     Specifically, Defendant has alleged that the Altice One system infringes claim 1 of the '979 patent.

117.     Altice does not infringe claim 1 of the '979 patent.

118.     Without limiting the generality of the foregoing and by way of example only, the Altice One system does not meet, either literally or under the doctrine of equivalents, at least the following claim limitation of claim 1 of the '979 patent: "a signal to initiate provisioning of the first device with a network if the tracked operating parameter occurs within a designated time interval," wherein the operating parameter includes "an onset of a signal transmission from the first device."  The system does not initiate provisioning when the onset of a signal transmission of a first device occurs within a time interval.

## <u>COUNT</u> 10
### (Declaratory Judgment of Invalidity of the '979 Patent)

119.     The foregoing paragraphs are incorporated as if set forth herein.

120.     By virtue of Defendant's past litigation history and assertion letters to Altice, an actual controversy exists between Altice and Defendant as to whether claim 1 of the '979 patent is valid.

121.     Claim 1 of the '979 patent is invalid and void because it fails to comply with one or more of the conditions and requirements of the patent laws, including without limitation 35 U.S.C. §§ 101, 102, 103, and/or 112, and/or the rules, regulations, laws, and decisions pertaining thereto.

122.     Claim 1 of the '979 patent is invalid under 35 U.S.C. § 101 because, in general terms, it is directed to the patent-ineligible abstract idea of taking an action if a request is made within a given time period.  Claim 1 recites no unconventional application of this idea, and simply generically applies it to a network environment.

123.     Even if the Asserted Claim were not invalid under Section 101, and in light of Defendant's apparent construction of the claim employed in its infringement allegation, the claim would be invalid under 35 U.S.C. §§ 102 and/or 103.  As a non-limiting example, this claim is anticipated or rendered obvious in view of U.S. Pat. App. Pub. No. 2001/0053135, which published on December 20, 2001 (before the January 13, 2003, priority date of the '979 patent).

124.     Claim 1 of the '979 patent is also invalid under 35 U.S.C. § 112 because, for example, it lacks adequate written description (e.g., there is no adequate written description of "sending a signal to initiate provisioning of the first device with a network if the tracked operating parameter occurs within a designated time interval").

125.     Pursuant to 28 U.S.C. §§ 2201 and 2202, a judicial determination of the respective rights of the parties with respect to whether the Asserted Claim of the '979 patent is invalid and void is necessary and appropriate under the circumstances.

## COUNT 11
### (Declaratory Judgment of Non-infringement of the '465 patent)

126.     The foregoing paragraphs are incorporated as if set forth herein.

127.     By virtue of Defendant's past litigation history and assertion letters to Altice, an actual controversy exists between Altice and Defendant as to whether Altice infringes the Asserted Claim of the '465 patent.  A valid and justiciable controversy has arisen and exists between Altice and Defendant within the meaning of 28 U.S.C. § 2201.

128.     Defendant has made allegations of infringement of the '465 patent "relating to exemplary Altice, Optimum, and Suddenlink (referred to as 'Altice' for brevity herein) networks and equipment."  (July 27, 2020 correspondence at BB-033.)

129.     Specifically, Defendant has alleged that Altice's Altice One system infringes claim 1 of the '465 patent.

130.     Altice does not infringe claim 1 of the '465 patent.

131.     Without limiting the generality of the foregoing and by way of example only, Altice does not meet, either literally or under the doctrine of equivalents, at least the following claim limitation of claim 1 of the '465 patent: "identifying a received frame as a priority frame in case said extracted bit pattern matches with said search pattern."  Altice clears any alleged bit pattern during processing.

## COUNT 12
### (Declaratory Judgment of Invalidity of the '465 Patent)

132.     The foregoing paragraphs are incorporated as if set forth herein.

133.    By virtue of Defendant's past litigation history and assertion letters to Altice, an actual controversy exists between Altice and Defendant as to whether claim 1 of the '465 patent is valid.

134.    Claim 1 of the '465 patent is invalid and void because it fails to comply with one or more of the conditions and requirements of the patent laws, including without limitation 35 U.S.C. §§ 101, 102, 103, and/or 112, and/or the rules, regulations, laws, and decisions pertaining thereto.

135.    Claim 1 of the '465 patent is invalid under 35 U.S.C. § 101 because, in general terms, it is directed to the patent-ineligible abstract idea of taking an action (e.g., granting rights, or directing an object) when a valid code is input.  Claim 1 merely recites this idea to the generic environment of network traffic.

136.    Even if the Asserted Claim were not invalid under Section 101, and in light of Defendant's apparent construction of the claim employed in its infringement allegation, the claim would be invalid under 35 U.S.C. §§ 102 and/or 103.  As a non-limiting example, this claim is anticipated or rendered obvious in view of Pat. No. 6,222,841 (filed on May 14, 1997, before the December 17, 1999, priority date of the '465 patent).

137.    Claim 1 of the '465 patent is also invalid under 35 U.S.C. § 112 because, for example, it lacks adequate written description (e.g., there is no adequate written description of "extracting a bit pattern").

138.    Pursuant to 28 U.S.C. §§ 2201 and 2202, a judicial determination of the respective rights of the parties with respect to whether each Asserted Claim of the '465 patent is invalid and void is necessary and appropriate under the circumstances.

## COUNT 13
### (Declaratory Judgment of Non-infringement of the RE'904 patent)

139.    The foregoing paragraphs are incorporated as if set forth herein.

140.    By virtue of Defendant's past litigation history and assertion letters to Altice, an actual controversy exists between Altice and Defendant as to whether Altice infringes the Asserted Claim of the RE'904 patent.  A valid and justiciable controversy has arisen and exists between Altice and Defendant within the meaning of 28 U.S.C. § 2201.

141.    Defendant has made allegations of infringement of the RE'904 patent "relating to exemplary Altice, Optimum, and Suddenlink (referred to as 'Altice' for brevity herein) networks and equipment."  (July 27, 2020 correspondence at BB-131.)

142.    In particular, Defendant has alleged that the Altice One system infringes claim 7 of the RE'904 patent.

143.    Altice does not infringe claim 7 of the RE'904 patent.

144.    Without limiting the generality of the foregoing and by way of example only, Altice does not meet, either literally or under the doctrine of equivalents, at least the following claim limitation of claim 7 of the RE'904 patent: "wherein the detecting [of a priority frame] is based on a match between the extracted bit pattern and the search pattern."  Altice clears any alleged bit pattern during processing.

## COUNT 14
### (Declaratory Judgment of Invalidity of the RE'904 Patent)

145.    The foregoing paragraphs are incorporated as if set forth herein.

146.    By virtue of Defendant's past litigation history and assertion letters to Altice, an actual controversy exists between Altice and Defendant as to whether claim 7 of the RE'904 patent is valid.

147.    Claim 7 of the RE'904  patent is invalid and void because it fails to comply with one or more of the conditions and requirements of the patent laws, including without limitation 35 U.S.C. §§ 101, 102, 103, and/or 112, and/or the rules, regulations, laws, and decisions pertaining thereto.

148.    Claim 7 of the RE'904 patent is invalid under 35 U.S.C. § 101 because, in general terms, it is directed to the patent-ineligible abstract idea of taking an action (e.g., granting rights, or directing an object) when a valid code is input.  Claim 1 merely recites this idea to the generic environment of network traffic.

149.    Even if the Asserted Claim were not invalid under Section 101, and in light of Defendant's apparent construction of the claim employed in its infringement allegation, the claim would be invalid under 35 U.S.C. §§ 102 and/or 103.  As a non-limiting example, this claim is anticipated or rendered obvious in view of Pat. No. 6,222,841 (filed on May 14, 1997, before the December 17, 1999, priority date of the RE'904 patent).

150.    Claim 7 of the RE'904 patent is also invalid under 35 U.S.C. § 112 because, for example, it is indefinite (e.g., the term "adjusting a duration of the transmit period reserved for priority frames based on statistic information regarding sent priority frames" is not reasonable certain).

151.    Pursuant to 28 U.S.C. §§ 2201 and 2202, a judicial determination of the respective rights of the parties with respect to whether the Asserted Claim of the RE'904 patent is invalid and void is necessary and appropriate under the circumstances.

## COUNT 15
### (Declaratory Judgment of Non-infringement of the '664 patent)

152.    The foregoing paragraphs are incorporated as if set forth herein.

153.     By virtue of Defendant's past litigation history and assertion letters to Altice, an actual controversy exists between Altice and Defendant as to whether Altice infringes the Asserted Claim of the '664 patent.  A valid and justiciable controversy has arisen and exists between Altice and Defendant within the meaning of 28 U.S.C. § 2201.

154.     Defendant has made allegations of infringement of the '664 patent "relating to exemplary Altice, Optimum, and Suddenlink (referred to as 'Altice' for brevity herein) networks and equipment."  (July 27, 2020 correspondence at BB-083.)

155.     Specifically, Defendant alleges that Juniper routers and switches (supplied by a third party) deployed in Altice's network infringe claim 7 of the '664 patent.

156.     Altice does not infringe claim 7 of the '664 patent.

157.     Without limiting the generality of the foregoing and by way of example only, Altice does not meet, either literally or under the doctrine of equivalents, at least the following claim limitation of claim 7 of the '664 patent: "representing each of said interconnections as a link between said at least two network elements" where "interconnections [are] created by [a] digital cross connect."  Altice does not model digital cross connect interconnections as links rather than nodes.

## COUNT 16
### (Declaratory Judgment of Invalidity of the '664 Patent)

158.     The foregoing paragraphs are incorporated as if set forth herein.

159.     By virtue of Defendant's past litigation history and assertion letters to Altice, an actual controversy exists between Altice and Defendant as to whether claim 7 of the '664 patent is valid.

160.     Claim 7 of the '664 patent is invalid and void because it fails to comply with one or more of the conditions and requirements of the patent laws, including without limitation

35 U.S.C. §§ 101, 102, 103, and/or 112, and/or the rules, regulations, laws, and decisions pertaining thereto.

161.    Claim 7 of the '664 patent is invalid under 35 U.S.C. § 101 because, in general terms, it is directed to the patent-ineligible abstract idea of connecting two points on a graph.  The claim does not apply this idea in any unconventional idea; instead, it merely recites elements known in the art (such as digital cross connects).

162.    Even if the Asserted Claim were not invalid under Section 101, and in light of Defendant's apparent construction of the claim employed in its infringement allegation, the claim would be invalid under 35 U.S.C. §§ 102 and/or 103.  As a non-limiting example, this claim is anticipated or rendered obvious in view of U.S. Pat. Pub. No. 2003/0133556 (which published on July 17, 2003, before the September 30, 2004, priority date of the '664 patent).

163.    Claim 7 of the '664 patent is also invalid under 35 U.S.C. § 112 because, for example, it is indefinite (e.g., the element "representing each of said interconnections as a link" is not reasonably certain).

164.    Pursuant to 28 U.S.C. §§ 2201 and 2202, a judicial determination of the respective rights of the parties with respect to whether the Asserted Claim of the '664 patent is invalid and void is necessary and appropriate under the circumstances.

## <u>COUNT</u> 17
### (Declaratory Judgment of Non-infringement of the '315 patent)

165.    The foregoing paragraphs are incorporated as if set forth herein.

166.    By virtue of Defendant's past litigation history and assertion letters to Altice, an actual controversy exists between Altice and Defendant as to whether Altice infringes the Asserted Claim of the '315 patent.  A valid and justiciable controversy has arisen and exists between Altice and Defendant within the meaning of 28 U.S.C. § 2201.

167.    Defendant has made allegations of infringement of the '315 patent "relating to exemplary Altice, Optimum, and Suddenlink (referred to as 'Altice' for brevity herein) networks and equipment."  (July 27, 2020 correspondence at BB-112.)

168.    Specifically, Defendant has alleged that Juniper routers and switches (supplied by a third party) deployed within Altice's network infringe claim 1 of the '315 patent.

169.    Altice does not infringe claim 1 of the '315 patent.

170.    Without limiting the generality of the foregoing and by way of example only, Altice does not meet, either literally or under the doctrine of equivalents, at least the following claim limitation of claim 1 of the '315 patent: "constructing a classification index including the set of classification parameters for a plurality of data packets, and also including information about a plurality of queues associated with the QoS parameters."

## COUNT 18
### (Declaratory Judgment of Invalidity of the '315 Patent)

171.    The foregoing paragraphs are incorporated as if set forth herein.

172.    By virtue of Defendant's past litigation history and assertion letters to Altice, an actual controversy exists between Altice and Defendant as to whether claim 1 of the '315 patent is valid.

173.    Claim 1 of the '315 patent is invalid and void because it fails to comply with one or more of the conditions and requirements of the patent laws, including without limitation 35 U.S.C. §§ 101, 102, 103, and/or 112, and/or the rules, regulations, laws, and decisions pertaining thereto.

174.    Claim 1 of the '315 patent is invalid under 35 U.S.C. §§ 102 and/or 103.  As a non-limiting example, this claim is anticipated or rendered obvious in view of U.S. Pat. No. 6,977,930

(which was filed on February 14, 2000, before the '315 patent's earliest possible priority date of October 27, 2000).

175.    Claim 1 of the '315 patent is also invalid under 35 U.S.C. § 112 because, for example, it lacks adequate written description (e.g., there is no adequate written description of "constructing a classification index including the QoS parameters and information about a plurality of queues associated with the QoS parameters").

176.    Pursuant to 28 U.S.C. §§ 2201 and 2202, a judicial determination of the respective rights of the parties with respect to whether each Asserted Claim of the '315 patent is invalid and void is necessary and appropriate under the circumstances.

**<u>COUNT</u> 19**
**(Declaratory Judgment of Non-infringement of the '950 patent)**

177.    The foregoing paragraphs are incorporated as if set forth herein.

178.    By virtue of Defendant's past litigation history and assertion letters to Altice, an actual controversy exists between Altice and Defendant as to whether Altice infringes the Asserted Claim of the '950 patent.  A valid and justiciable controversy has arisen and exists between Altice and Defendant within the meaning of 28 U.S.C. § 2201.

179.    Defendant has accused Altice's Altice Mobile service of infringing claim 1 of the '950 patent.

180.    Altice does not infringe claim 1 of the '950 patent.

181.    Without limiting the generality of the foregoing and by way of example only, Altice does not meet, either literally or under the doctrine of equivalents, at least the following claim limitation of claim 1 of the '950 patent: "relating, at the application layer using a routing database, a receiver identifier, the receiver identifier being contained in the associated message routing information and associated with the intended receiver, to a method associated with a network

connection type associated with the second digital mobile network and corresponding routing format information associated with the second digital mobile network protocol, the routing format information associated with the second digital mobile network protocol comprising at least a second protocol mobile carrier interface format type and a second protocol mobile carrier addressing format type."  Altice does not re-format messages for a destination network.

## COUNT <u>20</u>
### (Declaratory Judgment of Invalidity of the '950 Patent)

182.    The foregoing paragraphs are incorporated as if set forth herein.

183.    By virtue of Defendant's past litigation history and assertion letters to Altice, an actual controversy exists between Altice and Defendant as to whether claim 1 of the '950 patent is valid.

184.    Claim 1 of the '950 patent is invalid and void because it fails to comply with one or more of the conditions and requirements of the patent laws, including without limitation 35 U.S.C. §§ 101, 102, 103, and/or 112, and/or the rules, regulations, laws, and decisions pertaining thereto.

185.    Claim 1 of the '950 patent is invalid under 35 U.S.C. § 101 because, in general terms, it is directed to the patent-ineligible abstract idea of translating a message into a format understood by the receiver.

186.    Even if the Asserted Claim were not invalid under Section 101, and in light of Defendant's apparent construction of the claim employed in its infringement allegation, the claim would be invalid under 35 U.S.C. §§ 102 and/or 103.  As a non-limiting example, this claim is anticipated or rendered obvious in view of Pat. No. 5,852,660 (which issued on December 22, 1998, before the August 15, 2000, priority date of the '950 patent).

187.   Claim 1 of the '950 patent is also invalid under 35 U.S.C. § 112 because, for example, it is indefinite (e.g., the element "relating, at the application layer using a routing database, a receiver identifier, the receiver identifier being contained in the associated message routing information and associated with the intended receiver, to a method associated with a network connection type associated with the second digital mobile network and corresponding routing format information associated with the second digital mobile network protocol" is not reasonably certain).

188.   Pursuant to 28 U.S.C. §§ 2201 and 2202, a judicial determination of the respective rights of the parties with respect to whether each Asserted Claim of the '950 patent is invalid and void is necessary and appropriate under the circumstances.

## COUNT 21
### (Declaratory Judgment of Non-infringement of the '081 patent)

189.   The foregoing paragraphs are incorporated as if set forth herein.

190.   By virtue of Defendant's past litigation history and assertion letters to Altice, an actual controversy exists between Altice and Defendant as to whether Altice infringes the Asserted Claims of the '081 patent.  A valid and justiciable controversy has arisen and exists between Altice and Defendant within the meaning of 28 U.S.C. § 2201.

191.   Defendant has alleged that Altice's Altice Mobile service infringes claim 1 and 2 of the '081 patent.

192.   Altice does not infringe claim 1 or 2 of the '081 patent.

193.   Without limiting the generality of the foregoing and by way of example only, Altice does not meet, either literally or under the doctrine of equivalents, at least the following claim limitation of claim 1 of the '081 patent: "receiving an address of a Server-Call State Control

Function (S-CSCF) at the I-CSCF from the UMS."  Moreover, claim 1 was cancelled during re-exam.

**COUNT 22**
**(Declaratory Judgment of Invalidity of the '081 Patent)**

194.    The foregoing paragraphs are incorporated as if set forth herein.

195.    By virtue of Defendant's past litigation history and assertion letters to Altice, an actual controversy exists between Altice and Defendant as to whether claims 1 and 2 of the '081 patent are valid.

196.    Claim 1 and 2 of the '081 patent are invalid and void because they fail to comply with one or more of the conditions and requirements of the patent laws, including without limitation 35 U.S.C. §§ 101, 102, 103, and/or 112, and/or the rules, regulations, laws, and decisions pertaining thereto.

197.    Claim 1 of the '081 patent was cancelled during re-exam.

198.    Claim 2 of the '081 patent is invalid under 35 U.S.C. § 101 because, in general terms, it is directed to the patent-ineligible abstract idea of handling a phone call.

199.    Even if the Asserted Claim were not invalid under Section 101, and in light of Defendant's apparent construction of the claim employed in its infringement allegation, the claim would be invalid under 35 U.S.C. §§ 102 and/or 103.  As a non-limiting example, this claim is anticipated or rendered obvious in view of Pat. No. 6,654,606 (which was filed on September 29, 2000, before the March 12, 2001, priority date of the '081 patent).

200.    Claim 2 of the '081 patent is also invalid under 35 U.S.C. § 112 because, for example, it lacks adequate written description (e.g., there is no adequate written description of "sending a call setup request from the I-CSCF to the S-CSCF").

201.     Pursuant to 28 U.S.C. §§ 2201 and 2202, a judicial determination of the respective rights of the parties with respect to whether each Asserted Claim of the '081 patent is invalid and void is necessary and appropriate under the circumstances.

### COUNT 23
**(Declaratory Judgment of Non-infringement of the '211 patent)**

202.     The foregoing paragraphs are incorporated as if set forth herein.

203.     By virtue of Defendant's past litigation history and assertion letters to Altice, an actual controversy exists between Altice and Defendant as to whether Altice infringes the Asserted Claim of the '211 patent.  A valid and justiciable controversy has arisen and exists between Altice and Defendant within the meaning of 28 U.S.C. § 2201.

204.     Defendant has alleged that Altice's Altice Mobile service infringes claim 1 of the '211 patent.

205.     Altice does not infringe claim 1 of the '211 patent.

206.     Without limiting the generality of the foregoing and by way of example only, Altice does not meet, either literally or under the doctrine of equivalents, at least the following claim limitation of claim 1 of the '211 patent: "receiving a second query at the UMS from the S-CSCF based at least in part on the SI."

### COUNT 24
**(Declaratory Judgment of Invalidity of the '211 Patent)**

207.     The foregoing paragraphs are incorporated as if set forth herein.

208.     By virtue of Defendant's past litigation history and assertion letters to Altice, an actual controversy exists between Altice and Defendant as to whether claim 1 of the '211 patent is valid.

209.    Claim 1 of the '211 patent is invalid and void because it fails to comply with one or more of the conditions and requirements of the patent laws, including without limitation 35 U.S.C. §§ 101, 102, 103, and/or 112, and/or the rules, regulations, laws, and decisions pertaining thereto.

210.    Claim 1 of the '211 patent is invalid under 35 U.S.C. § 101 because, in general terms, it is directed to the patent-ineligible abstract idea of handling a phone call.

211.    Even if the Asserted Claim were not invalid under Section 101, and in light of Defendant's apparent construction of the claim employed in its infringement allegation, the claim would be invalid under 35 U.S.C. §§ 102 and/or 103.  As a non-limiting example, this claim is anticipated or rendered obvious in view of Pat. No. 6,654,606 (which was filed on September 29, 2000, before the March 12, 2001, priority date of the '081 patent).

212.    Pursuant to 28 U.S.C. §§ 2201 and 2202, a judicial determination of the respective rights of the parties with respect to whether the Asserted Claim of the '211 patent is invalid and void is necessary and appropriate under the circumstances.

## <u>COUNT</u> 25
### (Declaratory Judgment of Non-infringement of the '372 patent)

213.    The foregoing paragraphs are incorporated as if set forth herein.

214.    By virtue of Defendant's past litigation history and assertion letters to Altice, an actual controversy exists between Altice and Defendant as to whether Altice infringes the Asserted Claim of the '372 patent.  A valid and justiciable controversy has arisen and exists between Altice and Defendant within the meaning of 28 U.S.C. § 2201.

215.    Defendant has alleged that Altice's Altice Mobile service infringes claim 1 of the '372 patent.

216.    Altice does not infringe claim 1 of the '372 patent.

217.    Without limiting the generality of the foregoing and by way of example only, Altice does not meet, either literally or under the doctrine of equivalents, at least the following claim limitation of claim 1 of the '372 patent: "receiving the stored transport address at the first server from the second server in response to the loss of the transport address by the first server."

### COUNT 26
### (Declaratory Judgment of Invalidity of the '372 Patent)

218.    The foregoing paragraphs are incorporated as if set forth herein.

219.    By virtue of Defendant's past litigation history and assertion letters to Altice, an actual controversy exists between Altice and Defendant as to whether claim 1 of the '372 patent is valid.

220.    Claim 1 of the '372 patent is invalid and void because it fails to comply with one or more of the conditions and requirements of the patent laws, including without limitation 35 U.S.C. §§ 101, 102, 103, and/or 112, and/or the rules, regulations, laws, and decisions pertaining thereto.

221.    Claim 1 of the '372 patent is invalid under 35 U.S.C. § 101 because, in general terms, it is directed to the patent-ineligible abstract idea of having a back-up copy of data.

222.    Even if the Asserted Claim were not invalid under Section 101, and in light of Defendant's apparent construction of the claim employed in its infringement allegation, the claim would be invalid under 35 U.S.C. §§ 102 and/or 103.  As a non-limiting example, this claim is anticipated or rendered obvious in view of U.S. Pat. No. 6,788,936 (which was filed on April 12, 2000, before the March 12, 2001, priority date of the '372 patent).

223.    Pursuant to 28 U.S.C. §§ 2201 and 2202, a judicial determination of the respective rights of the parties with respect to whether the Asserted Claim of the '372 patent is invalid and void is necessary and appropriate under the circumstances.

## COUNT 27
**(Declaratory Judgment of Non-infringement of the '846 patent)**

224.     The foregoing paragraphs are incorporated as if set forth herein.

225.     By virtue of Defendant's past litigation history and assertion letters to Altice, an actual controversy exists between Altice and Defendant as to whether Altice infringes the Asserted Claim of the '846 patent.  A valid and justiciable controversy has arisen and exists between Altice and Defendant within the meaning of 28 U.S.C. § 2201.

226.     Defendant has alleged that Altice's Altice Mobile service infringes claim 1 of the '846 patent.

227.     Altice does not infringe claim 1 of the '846 patent.

228.     Without limiting the generality of the foregoing and by way of example only, Altice does not meet, either literally or under the doctrine of equivalents, at least the following claim limitation of claim 1 of the '846 patent: "in response to the request from the first server to restore the transport address, communicating the transport address to the first server from the second server."

## COUNT 28
**(Declaratory Judgment of Invalidity of the '846 Patent)**

229.     The foregoing paragraphs are incorporated as if set forth herein.

230.     By virtue of Defendant's past litigation history and assertion letters to Altice, an actual controversy exists between Altice and Defendant as to whether claim 1 of the '846 patent is valid.

231.     Claim 1 of the '846 patent is invalid and void because it fails to comply with one or more of the conditions and requirements of the patent laws, including without limitation

35 U.S.C. §§ 101, 102, 103, and/or 112, and/or the rules, regulations, laws, and decisions pertaining thereto.

232.    Claim 1 of the '846 patent is invalid under 35 U.S.C. § 101 because, in general terms, it is directed to the patent-ineligible abstract idea of having a back-up copy of data.

233.    Even if the Asserted Claim were not invalid under Section 101, and in light of Defendant's apparent construction of the claim employed in its infringement allegation, the claim would be invalid under 35 U.S.C. §§ 102 and/or 103.  As a non-limiting example, this claim is anticipated or rendered obvious in view of U.S. Pat. No. 6,788,936 (which was filed on April 12, 2000, before the March 12, 2001, priority date of the '846 patent).

234.    Pursuant to 28 U.S.C. §§ 2201 and 2202, a judicial determination of the respective rights of the parties with respect to whether the Asserted Claim of the '846 patent is invalid and void is necessary and appropriate under the circumstances.

**<u>COUNT</u> 29**
**(Declaratory Judgment of Non-infringement of the '222 patent)**

235.    The foregoing paragraphs are incorporated as if set forth herein.

236.    By virtue of Defendant's past litigation history and assertion letters to Altice, an actual controversy exists between Altice and Defendant as to whether Altice infringes the Asserted Claim of the '222 patent.  A valid and justiciable controversy has arisen and exists between Altice and Defendant within the meaning of 28 U.S.C. § 2201.

237.    Defendant has alleged that Altice's Altice Mobile service infringes claim 1 of the '222 patent.

238.    Altice does not infringe claim 1 of the '222 patent.

239.    Without limiting the generality of the foregoing and by way of example only, Altice does not meet, either literally or under the doctrine of equivalents, at least the following claim

limitation of claim 1 of the '222 patent: "receiving a call setup request including a subscriber identity and a dialed alias for a subscriber at a serving-call state control function (S-CSCF) for call registration after the S-CSCF crashes and restarts."

**COUNT 30**
**(Declaratory Judgment of Invalidity of the '222 Patent)**

240.    The foregoing paragraphs are incorporated as if set forth herein.

241.    By virtue of Defendant's past litigation history and assertion letters to Altice, an actual controversy exists between Altice and Defendant as to whether claim 1 of the '222 patent is valid.

242.    Claim 1 of the '222 patent is invalid and void because it fails to comply with one or more of the conditions and requirements of the patent laws, including without limitation 35 U.S.C. §§ 101, 102, 103, and/or 112, and/or the rules, regulations, laws, and decisions pertaining thereto.

243.    Claim 1 of the '222 patent is invalid under 35 U.S.C. § 101 because, in general terms, it is directed to the patent-ineligible abstract idea of having a back-up copy of data.

244.    Even if the Asserted Claim were not invalid under Section 101, and in light of Defendant's apparent construction of the claim employed in its infringement allegation, the claim would be invalid under 35 U.S.C. §§ 102 and/or 103.  As a non-limiting example, this claim is anticipated or rendered obvious in view of U.S. Pat. No. 6,788,936 (which was filed on April 12, 2000, before the March 12, 2001, priority date of the '222 patent).

245.    Pursuant to 28 U.S.C. §§ 2201 and 2202, a judicial determination of the respective rights of the parties with respect to whether the Asserted Claim of the '222 patent is invalid and void is necessary and appropriate under the circumstances.

<u>**COUNT** 31</u>
**(Declaratory Judgment of Non-infringement of the RE'883 patent)**

246.     The foregoing paragraphs are incorporated as if set forth herein.

247.     By virtue of Defendant's past litigation history and assertion letters to Altice, an actual controversy exists between Altice and Defendant as to whether Altice infringes the Asserted Claim of the RE'883 patent.   A valid and justiciable controversy has arisen and exists between Altice and Defendant within the meaning of 28 U.S.C. § 2201.

248.     Defendant has alleged that Altice's Altice Mobile service infringes claim 1 of the RE'883 patent.

249.     Altice does not infringe claim 1 of the RE'883 patent.

250.     Without limiting the generality of the foregoing and by way of example only, Altice does not meet, either literally or under the doctrine of equivalents, at least the following claim limitation of claim 1 of the RE'883 patent: "a server in a telephone network invoking the operation of said EPC application solely by clicking on a control button on said user's associated device to cause said enhanced phone based collaboration to add the collaboration session to the existing telephone call between said users without the users exchanging collaboration session identifiers." Altice does not convert telephone calls to video calls.

<u>**COUNT** 32</u>
**(Declaratory Judgment of Invalidity of the RE'883 Patent)**

251.     The foregoing paragraphs are incorporated as if set forth herein.

252.     By virtue of Defendant's past litigation history and assertion letters to Altice, an actual controversy exists between Altice and Defendant as to whether claim 1 of the RE'883 patent is valid.

253.    Claim 1 of the RE'883 patent is invalid and void because it fails to comply with one or more of the conditions and requirements of the patent laws, including without limitation 35 U.S.C. §§ 101, 102, 103, and/or 112, and/or the rules, regulations, laws, and decisions pertaining thereto.

254.    Claim 1 of the RE'883 patent is invalid under 35 U.S.C. § 101 because, in general terms, it is directed to the patent-ineligible abstract idea of selecting an option through a user interface.

255.    Even if the Asserted Claim were not invalid under Section 101, and in light of Defendant's apparent construction of the claim employed in its infringement allegation, the claim would be invalid under 35 U.S.C. §§ 102 and/or 103.  As a non-limiting example, this claim is anticipated or rendered obvious in view of U.S. Pat. No. 5,884,032 (which issued on March 16, 1999, before the July 8, 2000, priority date of the RE'883 patent).

256.    Claim 1 of the RE'883 patent is also invalid under 35 U.S.C. § 112 because, for example, it lacks adequate written description (e.g., there is no adequate written description of "a server in a telephone network invoking the operation of said EPC application to cause said enhanced phone based collaboration to add the collaboration session to the existing telephone call").

257.    Pursuant to 28 U.S.C. §§ 2201 and 2202, a judicial determination of the respective rights of the parties with respect to whether the Asserted Claim of the RE'883 patent is invalid and void is necessary and appropriate under the circumstances.

## PRAYER FOR RELIEF

258.    WHEREFORE, Altice requests entry of judgement in its favor against Defendant as follows.

a.      For a declaration that Altice does not infringe any valid and enforceable Asserted Claim of any Asserted Patent;

b.      For a declaration that each Asserted Claim of each Asserted Patent is invalid and void because each fails to comply with one or more of the conditions and requirements of the patent laws, including without limitation 35 U.S.C. §§ 101, 102, 103, and 112.

c.      Finding the case exceptional and awarding Altice its attorneys' fees and costs pursuant to 35 U.S.C. § 285 & 28 U.S.C. § 1927, and this Court's inherent equitable powers; and

d.      For other such relief as the Court may deem just and proper.

### **Demand for Jury Trial**

Pursuant to Federal Rule of Civil Procedure 38(b), Altice hereby demands a trial by jury of all issues so triable in this action.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

_____

Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com

*Attorneys for Plaintiffs*

OF COUNSEL:

Amr O. Aly
JENNER & BLOCK LLP
919 Third Avenue
New York, NY  10022
(212) 891-1600

Yusuf Esat
Lisa M. Schoedel
Mitchell L. Denti
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL  60654-3456
(312) 222-9350

September 17, 2021